**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02190-RM

KARIN KOEBERGEN KINGSLEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

## ORDER

    This matter is before the Court on Plaintiff Karin Koebergen Kinglsey's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").  An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB.

    Defendant provided the Court with the administrative record.  (ECF Nos. 8; 8-1; 8-2; 8-3; 8-4; 8-5; 8-6; 8-7; 8-8.)  The parties have fully briefed the matter and it is ripe for adjudication.  (ECF Nos. 16; 19; 20.)

    For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB application and remands for further proceedings consistent with this Order.

I.  **BACKGROUND**

Plaintiff applied for DIB in October 2011, alleging she was disabled as of September 30, 2002, due to the following conditions that limit her ability to work: herniated discs, carpal tunnel syndrome, trigger finger in right hand, neuropathy in her right foot, and arthritis in both hands impairments. (Admin. R. ("Tr.") 114-15, 165.) After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ. (Tr. 53-62, 66-67.) The ALJ denied Plaintiff's application. (Tr. 12-25.) Plaintiff requested review of the ALJ's decision and, in June 2014, the Appeals Council denied such review. (Tr. 1-5, 11.) Plaintiff timely requested judicial review before the Court.

A.  **Background and Relevant Medical Evidence**

Plaintiff was born in 1951. (Tr. 54.) Plaintiff completed high school. (Tr. 166) Plaintiff's past relevant work history includes: bench jeweler, salesperson jeweler, optician, salesperson general merchandise, and office helper. (Tr. 50.)

Plaintiff claims she became disabled on September 30, 2002, due to physical impairments. (Tr. 114-15, 165.)

1.  Physical Impairments

In February 1993, Plaintiff reported tingling and numbness in her hands. (Tr. 311, 315.) Plaintiff was diagnosed with carpal tunnel syndrome and trigger finger (flexor tenosynovitis). (Tr. 314.) Plaintiff received treatment for her carpal tunnel syndrome and trigger finger which included non-steroidal anti-inflammatory medication, wrist splints, and physical therapy. (Tr. 298-313.) In August 1993, George Gutierrez, M.D., opined that Plaintiff could return to full-duty work without restriction. (Tr. 302.) In October 1993, Dr. Gutierrez noted that Plaintiff was working full-time at Nordstrom and discharged her from treatment. (Tr. 302.)

In January 1994, Arthur Civello, M.D., evaluated Plaintiff in relation to Plaintiff's worker's compensation claim.  (Tr. 231-36.)

In June 1997, John Missirian, M.D., evaluated Plaintiff regarding her left arm.  (Tr. 354-58.)  Plaintiff related her complaints related to a job incident that occurred in March 1997.  (Tr. 357.)  Dr. Missirian noted that Plaintiff's "present condition is not permanent and stationary" as well as that "her present left arm complaints are expected to subside completely within a very short period of time."  (Tr. 357.)  Dr. Missirian noted that "[w]ith respect to [Plaintiff's] right wrist and forearm, her present subjective symptoms are unsupported by objective findings on examination and the nature of those symptoms seem to be recurrent minor complaints… her right wrist and forearm symptoms do not need any medical attention or care at this time."  (Tr. 357.)

In March 1997, Plaintiff suffered a work-related injury to her upper left arm and neck.  (Tr. 360.)  In November 1997, Plaintiff had an MRI of the cervical spine which showed a "right lateralized disc herniation at C4-5, as well as a forminal bulge in the left C6-7 area."  (Tr. 393.)  In February 1998, Jerel Glassman, D.O., opined that Plaintiff should return to work with restriction which include "no repetitive lifting with the upper extremities, though occasional lifting would be alright; no prolonged up and down motion of the neck, and no lifting greater than 10 pounds on a regular basis and no lifting greater than 30 pounds at any time."  (Tr. 383.)  In April 1998, Dr. Glassman attributed Plaintiff's limitations to her "complex neck and upper extremity problem involving degenerative cervical disc disease and repetitive strain injury."  (Tr. 381.)  In May 1998, Dr. Glassman provided permanent work restrictions for Plaintiff due to her cervical spine and left shoulder injury.  (Tr. 378-80.)

In December 2002, Plaintiff reported to Dr. Glassman "occasional pain in the neck and occasional muscle spasm." (Tr. 367.) Dr. Grossman gave Plaintiff "renewals for Motrin as well as Valium . . . [as well as a] prescription for a new cervical pillow." (Tr. 367.)

In February 2004, David Silva, D.O. conducted a spine consultation. (Tr. 405-07.) Dr. Silva noted that Plaintiff has "some posterior complex pain with cervical extension, rotation and side-bending." (Tr. 406.) Dr. Silva opined that "a brief course of manipulative therapy directed at the cervical spine may be very helpful in maintaining her symptoms." (Tr. 406.) From February 2004 through April 2004, Plaintiff had elven physical therapy visits. (Tr. 479.)

In May 2005, J. Gregory Stillwell, D.P.M., diagnosed Plaintiff with Morton's neuroma which is a thickening of the tissue surrounding the digital nerve leading to the toes. (Tr. 439-41.) Pain limited her walking to no more than 30 minutes. (Tr. 439.) In June 2005, Dr. Stillwell prescribed orthotics for Plaintiff's right foot pain. (Tr. 440-41.) In May 2006, Robert Goodman, M.D., diagnosed Plaintiff with interdigital neuroma of the right third interspace. (Tr. 462.) Dr. Goodman injected Plaintiff's foot in an attempt to relieve her foot pain. (Tr. 461-63.)

In July 2005, Dr. Goodman treated Plaintiff for complaints of hand pain. (Tr. 419-20.) Dr. Goodman diagnosed Plaintiff with carpal tunnel syndrome "at least on the right" and "mild" flexor tenosynovitis. (Tr. 455-56.) Plaintiff declined an injection and elected to use over-the-counter medication and physical therapy. (Tr. 455-56.) In August 2005, Dr. Goodman gave Plaintiff a wrist splint to wear at night and referred her for an EMG which revealed carpal tunnel syndrome and a mild left-side disturbance of a nerve root at one level of her cervical spine. (Tr. 404, 417, 458.) In September 2006, Plaintiff received an injection which "relieved most of her [finger] symptoms" and that she was "able to perform activities of daily living without pain." (Tr. 467-68.)

4

In October 2006, Plaintiff reported right foot pain. (Tr. 469-70.) Plaintiff received an injection to treat her right foot pain. (Tr. 469-70.)

In June 2013, Dr. Silva opined that Plaintiff should be precluded from performing retail-type work due to her need to frequently change positions and lifting restrictions. (Tr. 485.)

In August 2013, Dr. Silva opined that Plaintiff can rarely lift ten pounds; occasionally lift five pounds; and perform no frequent lifting. (Tr. 486.) Dr. Silva opined that Plaintiff can stand five to ten minutes at a time and sit fifteen to twenty minutes at one time. (Tr. 486.) Dr. Silva opined that Plaintiff can sit less than a total of two hours and stand/walk a total of about two hours in an eight hour day. (Tr. 487.) Dr. Silva opined that Plaintiff would need a job which allowed for shifting positions from sitting, standing, and walking. (Tr. 487.) Dr. Silva opined that Plaintiff could rarely bend/stoop, squat, kneel/crawl, climb stairs/ladders, and reach. (Tr. 487-88.) Dr. Silva opined that she cannot use her hands for pushing, pulling, or fine manipulation. (Tr. 488.) Dr. Silva opined that Plaintiff could use her hands ten to fifteen minutes at one time before needing a break. (Tr. 488.) Dr. Silva opined that Plaintiff would be unable to work four or more days per month. (Tr. 488.)

Plaintiff reported that she can walk for ten minutes before she needs to rest and then can resume walking after one to four minutes of rest. (Tr. 178.)

At the hearing, Plaintiff testified that her neck pain caused her not to be able to turn her head. (Tr. 38-40.) Plaintiff testified that the neck pain also affected her concentration. (Tr. 48.) Plaintiff testified that her carpal tunnel syndrome caused arm pain and her trigger finger locked up. (Tr. 38-40.)

### B. The ALJ's Decision

On April 24, 2013, ALJ William Musseman issued his decision in this matter denying Plaintiff DIB. (Tr. 12-25.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 15-25.) ALJ Musseman found that Plaintiff has met the disability insured status of the Act through September 30, 2006 and has not engaged in substantial gainful activity since September 30, 2002, the alleged onset date. (Tr. 17.) ALJ Musseman found that Plaintiff has the following severe impairments: chronic neck pain, bilateral carpal tunnel syndrome, and stenosing flexor tenosynovitis of the right long finger. (Tr. 17-18.) ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 1.04, 1.00(B)(2)(c) or 11.04B. (Tr. 18.) ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows: "to perform light work as defined in 20 CFR 404.1567(b) except she could not climb ladders or scaffolds. She could perform only occasional gripping and grasping with force. She could do occasional keyboarding. She could not use air, torque, or vibrating tools." (Tr. 18-24.) ALJ Musseman found that Plaintiff has past relevant work and that she is able to perform such work. (Tr. 25.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Wright's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman found that Plaintiff could perform her past relevant work as a salesperson of general merchandise. (Tr. 25.)

Therefore, ALJ Musseman concluded that Plaintiff was not disabled. (Tr. 25.)

### C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 11.) On June 17, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS[1]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly

---

[1] C.F.R. citations are to part 404—which addresses DIB claims.

develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i) and 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines an individual as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. § 404.1520;

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. *Id*. at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

### III. ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that: (1) the ALJ erred by failing to evaluate properly the opinions of Plaintiff's treating and examining physicians (ECF No. 16 at 22-27); (2) the ALJ erred in his credibility determination (ECF No. 16 at 27-30);

and (3) the ALJ erred in his RFC determination, specifically that the ALJ failed to consider all of Plaintiff's impairments (ECF No. 16 at 30-34).

Because the Court finds the ALJ committed legal error due to his failure to discuss adequately all of Plaintiff's medically determinable impairments in making his RFC determination, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

      A.      **The ALJ Committed Reversible Error by Not Providing the Court with an Explanation as to How He Considered All of Plaintiff's Medically Determinable Impairments in Fashioning Plaintiff's RFC.**

A person is disabled within the meaning of the Social Security Act "only if his physical and mental impairments, considered in combination, preclude him from doing his previous work, as well as any other substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42

U.S.C. § 423(d)(2)(C)). In the RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

In this matter, the ALJ found that Plaintiff had the following severe impairments: "chronic neck pain, bilateral carpal tunnel syndrome, and stenosing flexor tenosynovitis of the right long finger." (Tr. 17.) The ALJ also notes that "[t]he record also mentions right foot problems including Morton's neuroma." (Tr. 18.) And the ALJ continues that "[Plaintiff's right foot problems are] not considered severe within the meaning of the Regulations, as the objective evidence does not establish that this complaint causes more than a minimal limitation in the claimant's ability to perform basic work activities." (Tr. 18.) That is, the ALJ found Plaintiff's right-foot problem to be a medically determinable impairment. (Tr. 17-18.) Thus, the ALJ was required to consider the limiting effects of Plaintiff's right-foot problem in fashioning Plaintiff's RFC. *See Wells*, 727 F.3d at 1065. In this matter, it is not clear that the ALJ considered the limiting effects of Plaintiff's right-foot impairment in fashioning Plaintiff's RFC. (*See generally* Tr. 18-24.)

The ALJ used boilerplate language. Specifically the ALJ, in fashioning the RFC, stated

> the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 18.) Further, the ALJ stated that "he has considered all the evidence of record, including Exhibits 1A through 22F, whether explicitly discussed in this decision or not." (Tr. 23.) Defendant argues that the Court should take the ALJ at his word. (ECF No. 19 at 20 (citing

11

*Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).) The Tenth Circuit, however, has rejected such boilerplate language. *Hardin v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). The ALJ must explain why specific evidence led him to his RFC determination. *See Hardin*, 362 F.3d at 679; *see also Kepler*, 68 F.3d at 391. The ALJ's blanket statement that he considered all of the evidence fails to inform the Court, in a meaningful and reviewable way, of the specific evidence the ALJ considered in determining Plaintiff's right-foot complaints were not credible and thus, did not need to be included in the RFC or that they were accounted for in the RFC. *See Hardin*, 362 F.3d at 679. Thus, *Flaherty* is distinguishable from the present matter because in that case the "ALJ's discussion of the evidence and his reasons for his conclusions demonstrate[d] that he considered all of Ms. Flaherty's impairments." 515 F.3d at 1071.

The Court's review of the record demonstrates that Plaintiff has complained of, and sought medical treatment for, her right-foot problems (including Morton's neuroma). (Tr. 165, 178, 439.) The Court is unable to reconcile how this medically determinable impairment comports with the ALJ's boilerplate and conclusory statement that the RFC accounts for all of Plaintiff's impairments. The ALJ found that Plaintiff is capable of performing light work which

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday. SSR 83-14, 1983 WL 31254, at *4.

Because Plaintiff complained that her right-foot impairment limits her ability to walk and stand, it was harmful error for the ALJ not to discuss how the RFC accounts for Plaintiff's right-foot impairment. *See* SSR 96-8p, 1996 WL 374184, at *7 (identifying that the ALJ must explain how any material inconsistencies or ambiguities in the case record were considered and resolved). The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. *Id.* The ALJ's RFC assessment in this matter fails to comply with this directive. (*See generally* Tr. 18-24.)

Thus, the ALJ erred in not providing an adequate discussion as to how the RFC accounts for Plaintiff's right-foot impairment. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (holding that when an ALJ does not provide an explanation for rejecting medical evidence, the Court cannot meaningfully review the ALJ's determination). Even if the ALJ were to have outright rejected Plaintiff's credibility with respect to the right-foot impairment complaints, the Court requires the ALJ to discuss "the significantly probative evidence he rejects." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). The ALJ did not do so in this matter. (*See generally* Tr. 18-24.) This error becomes clearer when the ALJ explicitly acknowledges Plaintiff's complaint regarding a perceived "lack of concentration" but that such allegation is not supported in the medical evidence and thus, not accounted for in the RFC. (Tr. 23.)

Defendant argues that "the record contradicts Plaintiff's claims about disabling foot limitations." (ECF No. 19 at 21.) The ALJ, however, provided no such discussion. The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "'Affirming this post hoc effort to salvage

the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id*. at 1084-85 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (a "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance . . . Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm").

## IV.  CONCLUSION

Based on the foregoing, the Court:

(1)  VACATES Defendant's denial of disability insurance benefits; and

(2)  REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 24th day of February, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge